# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 30, 2011

No. 11-20117
Summary Calendar

Lyle W. Cayce
Clerk

AMERISURE INSURANCE COMPANY,

Plaintiff–Appellant

v.

NAVIGATORS INSURANCE COMPANY,

Defendant–Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-2096

Before REAVLEY, SMITH, and PRADO, Circuit Judges.

PER CURIAM:[*]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This case is the second appeal arising from a diversity insurance subrogation case regarding an underlying tort lawsuit. The previous panel capably set out the facts of that underlying suit and we reproduce the relevant portions of them here:

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20117

On October 9, 2003, William Sylvester drove two employees of Texas Crewboats Inc., Captain Dixie Clanton and Deckhand Jimmy Satterfield, from Freeport, Texas to Morgan City, Louisiana where the two were to board and crew the Florida Lilly, one of Texas Crewboats's vessels. While en route, Sylvester fell asleep at the wheel, thereby causing the vehicle to veer off of the road and flip over. Clanton and Satterfield suffered significant injuries as a result. They sued Texas Crewboats and Sylvester in Louisiana state court, claiming negligence and recklessness against Sylvester and bringing similar claims under the Jones Act against Texas Crewboats. Clanton and Satterfield claimed that Sylvester was driving in the course and scope of his employment with Texas Crewboats and that Texas Crewboats was vicariously liable. They also sued Texas Crewboats for maintenance and cure benefits.

At the time, Texas Crewboats carried three insurance policies that the incident potentially implicated. Amerisure provided $1 million of primary automobile-liability insurance. Under that policy, Sylvester, who was driving the vehicle with the permission of Texas Crewboats, was also an insured. . . . Navigators was the excess insurer, covering up to $9 million. Under this arrangement, if an incident fell within the coverage of any of the primary insurers, that insurer must indemnify the insured up to $1 million, and then, Navigators would cover the remainder up to $9 million. Under the circumstances, Texas Crewboats wanted the case settled, and all of the interested parties, including the insurers, agreed. Following mediation, the parties agreed to the following settlement: Clanton's claims would be settled for $1,325,000 and Satterfield's for $1,025,000. The insurers, however, could not agree on which of them should pay. Amerisure argued that only the Fireman's and Navigators policies applied. Navigators insisted that the incident also fell within the Amerisure policy, and therefore, demanded that Amerisure pay its $1 million limit.

. . .

In April 2006, Amerisure moved for summary judgment in Louisiana state court, seeking a declaration that its policy did not cover the incident. On June 15, 2006, Amerisure voluntarily withdrew that motion. Ultimately, Amerisure paid $1 million and Navigators paid $1.35 million. . . . In the settlement agreement,

No. 11-20117

Amerisure reserved its right to seek reimbursement from Navigators through subrogation. During those settlement negotiations, Amerisure filed this subrogation action in the United States District Court for the Southern District of Texas.

*Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 302–04 (5th Cir. 2010).

The district court granted summary judgment to Navigators, and that order was appealed to this Court. The previous panel reversed the district court, holding that Amerisure could subrogate against Navigators. *Id.* at 313. The previous panel then remanded the case to the district court to determine whether Sylvester was an employee of Texas Crewboats or just an independent contractor. Both parties conducted discovery, and the district court held a bench trial on the issue of Sylvester's employment status. Finding that Sylvester was an independent contractor and not an employee of Texas Crewboats, the district court found for Navigators. Amerisure filed this appeal.

## II.  STANDARD OF REVIEW

When sitting in diversity, we must apply the substantive law of the forum state, in this case Texas. *Holt*, 627 F.3d at 191 (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). Our review of a district court's "legal conclusions as to the content of state law [is] de novo," but we review factual determinations under the state substantive law for clear error. *Northrop Grumman Ship Sys., Inc. v. Ministry of Defense of the Republic of Venex.*, 575 F.3d 491, 499 (5th Cir. 2009) (citations and emphasis omitted).

The ultimate conclusion that a person is either an employee or an independent contractor is a legal conclusion (reviewed de novo), *cf. Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1044 (5th Cir. 1987), but the test to determine that ultimate issue is "whether the employer has the right to control the progress, details, and methods of operations of the employee's work." *Thompson v. Travelers Indem. Co. of R.I.,* 789 S.W.2d 277, 278 (Tex. 1990). In determining

the right to control, Texas courts look at a variety of factors, *see Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002) (listing factors), but the "right of control is ordinarily a question of fact." *Sparger v. Worlley Hosp., Inc.*, 547 S.W.2d 582 (Tex. 1977); *see also Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1006 (5th Cir. 1998) (citing *Halliburton v. Tex. Indem. Ins. Co.*, 213 S.W.2d 677[, 680–81] (Tex. 1948)). It is only a question of law where there is "no dispute as to controlling facts and only one reasonable conclusion can be drawn from those facts." *Campbell*, 138 F.3d at 1006 (citing *Indus. Indem. Exchange v. Southard*, 160 S.W.2d 905, 906 (Tex. 1942)).

### III.  DISCUSSION

As this Court in *Brock* discussed with respect to determinations of workers' status under the federal Fair Labor Standards Act, there are really multiple determinations being made by the district court. *See Brock*, 814 F.2d at 1044–45. At base, there are those facts that underlie the factual findings under the *Limestone* factors.[1] The court in *Brock* described these as "historical facts." *Id.* at 1044. In this case, these include the district courts findings that Sylvester had no special training and that Sylvester was paid by the trip in cash and not a salary or hourly wage. One level up are the findings on the *Limestone* factors themselves, another factual determination. *Cf. id.* at 1044. In the language of the Texas caselaw in this area, these might be described as the "controlling facts." *See  Indus. Indem. Exch. v. Southard*, 160 S.W.2d at 906.

---

[1] In *Limestone Products Distribution v. McNamara*, the Texas Supreme Court laid out factors it considers when "meausr[ing] the right to control":

> (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job.

71 S.W.3d 308, 312 (Tex. 2002) (citations omitted).

No. 11-20117

Though the district court did not specifically describe its findings in this way, these findings here include, as to *Limestone* factor one, that "Sylvester retained control over the details of each assignment" and as to *Limestone* factor three that the nature of driving allowed Sylvester to "exercise independent discretion." *Amerisure Ins. Co. v. Navigators Ins. Co.*, No. 4:06-CV-2096, 2011 WL 677338, at *2 (S.D. Tex. Feb. 15, 2011). While the *Brock* court only had three levels of inquiry, the nature of the Texas precedent requires four determinations. The FLSA has factors that go to whether there was an employment relationship and right of control is one of those. *Brock*, 811 F.2d at 1043–44 (citing *United States v. Silk*, 331 U.S. 704, 715 (1947)) (listing "the right of control" as one of the five *Silk* factors). But in Texas, the factors discussed in *Limestone* go to the right of control and right of control determines the ultimate legal question as to the worker's status. *Thompson*, 789 S.W.2d at 278.

The heart of the dispute here is over the controlling facts and the weight afforded them by the district court in determining whether Texas Crewboats had the right to control Sylvester and in turn, Sylvester's status as an employee or independent contractor. Since there is a dispute as to the controlling facts and the determination of right to control under Texas law is a question of fact, our review is for clear error. *See Campbell*, 138 F.3d at 1006 (applying the clear error standard to a determination of a worker's status under Texas law). If, as here, "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *In re Jacobsen*, 609 F.3d 647, 662 (5th Cir. 2010) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985)) (internal quotation marks omitted).

Navigators showed that Sylvester maintained discretion over route selection, which speaks to a lack of control over the details of the work. It proved that though Sylvester worked about twenty hours per week for three years, he chose when to work and did not have to accept any particular job from Texas

5

No. 11-20117

Crewboats. Sylvester took no part in any benefits programs of Texas Crewboats (retirement, health insurance) and was paid by the job. Finally, Navigators showed that Sylvester was allowed to work other jobs during his time driving for Texas Crewboats. To be sure, Amerisure did show that Sylvester's truck was owned and maintained by Texas Crewboats at all relevant times. Moreover, these considerations are "prima facie" evidence of control under Texas law. *Ochoa v. Winerich Motor Sales Co.*, 94 S.W.2d 416, 418 (Tex. 1936). Nonetheless, there was enough conflicting evidence marshaled by Navigators to render the district court's finding that Texas Crewboats did not have the right to control Sylvester not clearly erroneous.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment for Navigators.

AFFIRMED.